UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| CATRINA WARD | * | CIVIL ACTION |
| VERSUS | * | NO. 23-5503 |
| RAISER, LLC, ET AL. | * | SECTION "G" (2) |

**ORDER AND REASONS**

Pending before me is Plaintiff Catrina Ward's Motion for Leave to File Amended and Supplemental Complaint. ECF No. 15. United Financial Casualty Company timely filed an Opposition Memorandum. ECF No. 16. Plaintiff filed a Reply Memorandum. ECF No. 18. No party requested oral argument in accordance with Local Rule 78.1, and the court agrees that oral argument is unnecessary.

Having considered the record, the submissions and arguments of counsel, and the applicable law, Plaintiff's Motion for Leave to Amend is DENIED for the reasons stated herein.

**I.    BACKGROUND**

On August 23, 2023, Plaintiff filed suit in state court against Raiser, LLC (a wholly owned subsidiary of Uber Technologies, Inc.), its insurer United Financial Casualty Company ("UFCC"), Plaintiff's insurer Atlantic Specialty Insurance Company, and driver Anthony Dominick alleging personal injuries sustained while working as an Uber driver after Defendant Dominick drove his car into Plaintiff's vehicle while she waited for a customer. ECF No. 1-1 ¶¶ 1-3. UFCC removed the case on September 25, 2023. ECF No. 1. The Court issued a Scheduling Order on February 27, 2024. ECF No. 12.

On March 14, 2024, Plaintiff filed this motion to amend seeking to remove Defendant Dominick, amend and supplement her claims in relation to uninsured/underinsurance coverage, and, although not mentioned in her motion but addressed in her supporting memorandum, to add

1

the City of New Orleans and its insurer as new parties. ECF No. 15; No. 15-2 at 1. Specifically, as to the City of New Orleans, Plaintiff alleges that a local ordinance (Ord. No. 162-1722) requires the city to be a named insured on any insurance policy obtained by a rideshare provider; therefore, she is entitled to recover from the City all damages she would have been awarded if not for the City's failure to enforce its ordinance. ECF No. 15-3 ¶ II(7) and ¶ IV(18). The only basis cited in support of Plaintiff's motion to amend is that she filed the request within the Scheduling Order's deadline. ECF No. 15-2 at 1.

Defendant UFCC opposes the motion. ECF No. 16. It argues that it is not a proper defendant based on a valid and enforceable UM waiver executed by its named insured, and that the City of New Orleans is not a proper defendant based on the Fourth Circuit's recent decision holding Ord. No. 162-1722 unconstitutional. ECF No. 16 at 1; No. 16-1 at 2. UFCC also argues that Plaintiff seeks to add the City of New Orleans solely to defeat diversity jurisdiction, and under *Hensgens*, Plaintiff's request for leave to amend should be denied. ECF No. 16-1 at 3-4.

In Reply, Ward argues that Hensgen counsels in favor of allowing amendment because Ord. No. 162-1721 requires the City of New Orleans be named as an additional insured. ECF No. 18 at 1-2. Ward also argues that the UM waiver is not valid without an additional waiver from the City of New Orleans, as an additional insured. *Id*. at 2.

II. **APPLICABLE LAW AND ANALYSIS**

Plaintiff timely sought leave to amend before expiration of the March 28, 2024, deadline established by the governing Scheduling Order. ECF No. 12 at 2. Accordingly, the request for leave to amend would ordinarily be governed by Rule 15(a).[1] When, however, an amendment in

---

[1] *Compare Dussouy v. Gulf Coast Inv. Corp*., 660 F.2d 594, 598 (5th Cir. 1981) (noting the types of reasons that might justify denial of leave to amend under Rule 15 include undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, and undue prejudice to the opposing party) (citations omitted) *with S&W Enters., L.L.C. v. SouthTrust Bank of Ala., NA*, 315 F.3d 533, 536 (5th Cir. 2003) (holding that Rule 16(b)

a removed case would deprive the court of subject matter jurisdiction, a party may not simply rely on Rule 15(a) to amend a pleading.  Rather, 28 U.S.C. § 1447(e) controls the court's analysis.[2]

Section § 1447(e) provides:

If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court.[3]

Thus, the court has discretion to either grant the amendment and remand or deny the amendment. Courts must scrutinize proposed amendments naming non-diverse defendants in removed cases more closely than they would ordinary proposed amendments.[4]  "[W]hen an amendment would destroy jurisdiction, 'most authorities agree that leave should be denied in the absence of strong equities in favor of amendment.'"[5]

When analyzing whether to allow the addition of a non-diverse defendant in a removed case, the court must consider the factors outlined by the Fifth Circuit in *Hensgens v. Deere & Co.*, 833 F.2d 1179 (5th Cir. 1987).[6]  In *Hensgens,* the Fifth Circuit held that resolution of whether to permit a diversity-destroying amendment involves assessing the "competing interests" of (1) avoiding parallel federal/state proceedings with the inherent dangers of inconsistent results and the waste of judicial resources; and (2) a diverse defendant's statutorily granted choice of a state

---

governs leave to amend after a scheduling order deadline has expired and requires movant to demonstrate "good cause" before addressing the issue under the more liberal standard of Rule 15(a)).

[2] *Schindler v. Charles Schwab & Co*., *Inc.,* No. 05-0082, 2005 WL 1155862, at *2 (E.D. La. May 12, 2005) (citations omitted).  In short, § 1447(e) trumps Rule 15(a).  *Ascension Enters., Inc. v. Allied Signal, Inc.*, 969 F. Supp. 359, 360 (M.D. La. 1997).

[3] 28 U.S.C. § 1447(e); *accord Schindler*, 2005 WL 1155862, at *2 (citing *Ascension Enters., Inc.*, 969 F. Supp. at 360); *see also Doleac ex rel. Doleac v. Michalson*, 264 F.3d 470, 475, 488 (5th Cir. 2001).

[4] *Moore v. Manns*, 732 F.3d 454, 456 (5th Cir. 2013) (citing *Hensgens v. Deere & Co*., 833 F.2d 1179, 1182 (5th Cir. 1987)).

[5] *Delgado v. Ocean Harbor Cas. Ins. Co*., No. 22-1987, 2022 WL 17092125, at *2 (E.D. La. Nov. 21, 2022) (citing *Neely v. Scottsdale Ins. Co*., No. 14-48, 2014 WL 1572441, at *3 (E.D. La. Apr. 17, 2014) (citing *Hensgens,* 833 F.2d at 1182)).

[6] *G & C Land v. Farmland Mgmt. Servs.*, 587 F. App'x 99, 103 (5th Cir. 2014) ("In *Hensgens v. Deere & Co.*, this court directed district courts to exercise discretion when deciding whether to join a non-diverse party. . . ."). *Hensgens* referred to 28 U.S.C. § 1447(c), which was amended and is now codified at 28 U.S.C. § 1447(e).

or federal forum.[7] Balancing these competing interests is not served by a "rigid distinction of whether the proposed added party is an indispensable or permissive party" under the Federal Rules of Civil Procedure.[8] Rather, the court should consider a number of factors in deciding whether to allow post-removal joinder of a non-diverse defendant, including: (1) whether the purpose of the amendment is to defeat federal jurisdiction, (2) whether the plaintiff was dilatory in requesting the amendment, (3) whether the plaintiff will be significantly injured if the amendment is not allowed, and (4) whether any other factors bear on the equities.[9] The decision of whether to deny joinder or permit joinder and remand under § 1447(e) is within the discretion of the district court.[10]

### 1. Whether the Purpose of Amendment is to Defeat Diversity Jurisdiction

In analyzing the first factor, courts consider whether the plaintiff knew or should have known the identity of the nondiverse defendant when he filed the state court petition and whether the plaintiff states a valid claim against the nondiverse defendant.[11] When a plaintiff knows of the nondiverse defendant's identity upon initially filing suit in state court, yet fails to name him as a defendant, the later effort to amend suggests the purpose is to frustrate diversity jurisdiction.[12] Likewise, when a plaintiff seeks to add a non-diverse defendant shortly after removal, but before any additional discovery, this further suggests "that the amendment is sought for the purpose of

---

[7] *Id.*
[8] *Id.*
[9] *Id.*
[10] *Id.*
[11] *See, e.g.*, *Fontenot v. Johnson & Johnson*, No. 10-162, 2012 WL 2064722, at *4 (W.D. La. Apr. 13, 2012), *R.&R. adopted,* 2012 WL 2064848 (W.D. La. June 5, 2012) (citation omitted); *Richardson v. Wal-Mart Stores Tex., LLC*, 192 F. Supp. 3d 719, 726 (S.D. Tex. 2016).
[12] *See Martinez v. Holzknecht*, 701 F. Supp. 2d 886, 889 (S.D. Tex. 2010) (collecting cases).

4

defeating diversity."[13] The close timing of a motion to remand and a motion for leave to amend suggest that the amendment's primary purpose is to defeat diversity jurisdiction.[14]

If, however, the plaintiff states a valid claim against the proposed defendant, it is unlikely that the primary purpose of the amendment is to defeat diversity jurisdiction.[15] In determining whether the plaintiff states a claim against the proposed non-diverse defendant, courts employ the same standard used when considering whether a non-diverse defendant was fraudulently joined in the first place.[16] In other words, the court looks to whether there is "any possibility of recovery under state law against" the proposed defendant.[17] Typically, the court will conduct an inquiry similar to a Rule 12(b)(6) analysis of the allegations in a complaint, but "in rare cases, if 'a plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder . . . the district court may, in its discretion, pierce the pleadings and conduct a summary

---

[13] *Shargian v. Shargian*, 591 F. Supp. 3d 100, 108 (E.D. La. 2022) (citing *Martinez,* 701 F. Supp. 2d at 889-90 (citing *Mayes v. Rapoport*, 198 F.3d 457, 463 (4th Cir. 1999))).

[14] *Id.* at 109 (citing *Jacobsson v. Traditions Senior Mgmt., Inc*., No. 20-507, 2021 WL 1145624, at *6 (M.D. La. Feb. 23, 2021), *R.&R. adopted*, No. 20-507, 2021 WL 1138054 (M.D. La. Mar. 24, 2021) ("[T]hat Plaintiff filed a Motion to Remand days after filing his Motion to Amend demonstrates that the purpose of [the] amendment is to defeat diversity jurisdiction by amending claims against an improperly joined defendant after removal.")).

[15] *Schindler,* 2005 WL 1155862, at *3 ("[C]ourts have . . . recognized that when a plaintiff states a valid claim against a defendant, it is unlikely that the *primary* purpose of bringing those defendants into a litigation is to destroy diversity jurisdiction.") (emphasis in original (citation omitted)); *Noble v. Norfolk S. Corp*., No. 02-3233, 2003 WL 1618590, at *3 (E.D. La. Mar. 26, 2003) ("As long as the plaintiff states a valid claim against the new defendants, the principal purpose is not to destroy diversity jurisdiction.") (collecting cases); *see also Tillman v. CSX Transp., Inc.*, 929 F.2d 1023, 1029 (5th Cir. 1991); *Allen v. Walmart Stores, L.L.C.*, 907 F.3d 170, 186 (5th Cir. 2018) (noting plaintiff's failure to state plausible claim against proposed defendants gives an apparent reason for denying motion to amend).

[16] *Wells v. Medtronic, Inc*., 171 F. Supp. 3d 493, 506 (E.D. La. 2016) (relying on *Cobb v. Delta Exps., Inc*., 186 F.3d 675 (5th Cir. 1999) to hold that the "fraudulent joinder" test is used when determining whether to allow a pleading amendment that would join a non-diverse defendant and destroy the court's diversity jurisdiction); *Noble*, 2003 WL 1618590, at *3 (using the "fraudulent joinder" standard to determine whether the plaintiff's primary purpose in joining a non-diverse defendant was to defeat the court's diversity jurisdiction); *see Cobb*, 186 F.3d at 677–78 (explaining in dicta that "[a] request to join a party against whom recovery is not really possible and whose joinder would destroy subject matter jurisdiction (i.e., a request fraudulently to join a party) would never be granted.").

[17] *See Burden v. Gen. Dynamics Corp*., 60 F.3d 213, 216 (5th Cir. 1995) (citations omitted) ("If the plaintiff has any possibility of recovery under state law against the party whose joinder is questioned, then the joinder is not fraudulent in fact or law."); *Noble*, 2003 WL 1618590, at *4.

inquiry.'"[18] The burden of persuasion rests on the party claiming joinder is improper, and it is a heavy burden.[19]

UFCC argues that Plaintiff has no valid claim against the City to enforce the ordinance because the Fourth Circuit has already declared City Ord. 162-1722 unconstitutional. ECF No. 16-1 at 4 (citing ECF No. 16-2). The relevant ordinances provide, in pertinent part:

> Sec. 162-1721 – TNC insurance coverage
>
> . . .
>
> Any insurance policy obtained to comply with this section shall add the City of New Orleans as an insured and be filed annually with the Louisiana Public Service Commission. The policy shall provide for notification to the City Attorney of the City of New Orleans of non-renewal or cancellation of such policy.
>
> Sec. 162-1722. – [Transportation Network Company] insurance coverage limits.
>
> (a) A TNC shall ensure that TNC services are covered by an insurance policy or policies subject to the following coverage requirements:
>   (1) During TNC service Period One,[20] TNC services shall be covered by a policy or policies of primary liability insurance in the amount of at least $50,000.00 for death or personal injury of any one person, at least $100,000.00 for death or personal injury of two or more persons, and at least $25,000.00 for property damage per incident.
>   (2) During TNC service Period Two,[21] TNC services shall be covered by a policy or policies of primary liability insurance in the amount of at least $1,000,000.00 for death, personal injury and property damage. The policy or policies shall also provide uninsured or underinsured motorist coverage in the amount of at least $1,000,000.00.
>   (3) In addition to the coverage limits provided for in this section, a TNC shall also provide all other state-mandated coverages for motor vehicles as required by the state motor vehicle safety responsibility law, R.S. 32:851, et seq.

---

[18] *Wells*, 171 F. Supp. 3d at 506 (quoting *Smallwood v. Illinois Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004)).
[19] *Davidson v. Georgia-Pac., L.L.C.*, 819 F.3d 758, 765 (5th Cir. 2016) (citation omitted).
[20] Period One runs from the time a TNC driver logs onto the TNC digital network until he or she accepts a passenger match, and from the time the driver has completed the transaction, or the last passenger exits the vehicle, whichever is later, until the driver accepts another passenger match or logs off the TNC digital network. Ord. No. 162-1719(a)
[21] Period Two runs from the time a TNC driver accepts a passenger match until the driver has completed the transaction, or the last passenger exits the vehicle, whichever is later. Ord. No. 162-1719(b).

> (b) This section shall not limit the liability of a TNC arising out of an automobile accident involving a TNC driver in any action for damages against a TNC for an amount above the required insurance. Coverage under this section shall not be dependent on a personal automobile insurance policy first denying a claim, nor shall a personal automobile insurer be required to first deny a claim.

> Sec. 162-1726 – Failure to maintain required insurance.

>> Failure to maintain all required insurance at any time for any reason shall be grounds for the suspension and/or revocation of a TNC permit.

> Sec. 162-1727 - TNC driver notification of insurance companies and lienholders.

>> Any terms or conditions in the agreement between the TNC permit holder and TNC driver, or between the TNC permit holder and any passenger, that would act as a waiver of the TNC permit holder's liability to the passenger or the public, are declared contrary to public policy, null, void, and unenforceable.

In *Willie v. Nguyen*, 2023-458 (La. Ct. App. 4th Cir. Aug. 16, 2023), *writ denied*, No. 2023-1253 (La. 11/21/2023), 373 So. 3d 440, the Fourth Circuit granted writs to reverse the trial court's denial of UFCC's exception of no cause of action based on the UM waiver. After noting that the Fourth Circuit held that La. Rev. Stat. § 45:201.6 and § 22:1295(1)(a)(i) and (ii) permit transportation network companies to waive UM coverage in *Jean v. James River Ins. Co.*, 2019-41, p.4, 5 (La. Ct. App. 4th Cir. 5/29/19), 274 So. 3d 43, 46, it held that state law allowing UM waivers must prevail over conflicting City Ord. No. 162-1722.[22] *Willie*, No. 23-458 at p. 2 (citing *New Orleans Campaign For a Living Wage v. City of New Orleans*, 2002-991 (La. 9/4/02), 825 So. 2d 1098); *see also Washington v. Uber Techs., Inc.*, No. 22-2078, 2023 WL 3004662, at *2 (E.D. La. Apr. 19, 2023) (holding that Louisiana permits transportation network companies to waive UM coverage when La. Rev. Stat. § 45:201.6 and § 22:1295(1)(a)(i) and (ii) are read together).

---

[22] Louisiana Supreme Court Justice Genovese would have granted writs and reversed the Fourth Circuit for procedural reasons, reasoning that it improperly addressed the merits on an exception of no cause of action. *Willie v. Nguyen*, No. 2023-1253 (La. 11/21/2023), 373 So. 3d 440.

In this case, Plaintiff knew or should have known about Ord. 162-1722 from inception and did not seek to add the City until shortly after removal, suggesting the purpose of same was to defeat diversity jurisdiction. Further, based on the Fourth Circuit's decision in *Willie*, Plaintiff cannot state a cause of action against the City for failure to enforce its ordinance that prohibits UM waivers authorized by state law. Moreover, Ord. No. 162-1726 specifies consequences for violation, specifically, suspension and/or revocation of a TNC permit.

Consideration of this factor counsels against granting leave to amend.

### 2. Whether Plaintiff was Dilatory in Requesting Amendment

In assessing whether a plaintiff has been dilatory, courts examine the amount of time between the initiation of the original state court action and the filing of the motion to amend as well as the amount of time between removal of the case to federal court and the filing of the motion to amend.[23] "[S]ome 'courts applying *Hensgens* have found that a one or even a two-year delay in seeking to amend to add a new non-diverse defendant, depending on the circumstances, may not preclude joinder.'"[24] Other courts, however, have found delays of thirty days to be dilatory.[25] Some courts look to how far the litigation has progressed.[26]

Although Plaintiff did not seek to amend until over seven months after filing suit and six months after removal, the amendment period has not expired and ample time remains for discovery. Accordingly, I cannot find that Plaintiff has been dilatory under these facts.

---

[23] *Ellsworth, LeBlanc & Ellsworth, Inc. v. Strategic Outsourcing, Inc.*, No. 03-0613, 2003 WL 21783304, at *3 (E.D. La. Jul. 30, 2003) (citation omitted); *see also Richardson,* 192 F. Supp. 3d at 726–27 (citation omitted).
[24] *Wells*, 171 F. Supp. 3d at 510–11 (citations omitted).
[25] *Dettmer v. Safeco Ins. Co. of Indiana*, No. 22-0783, 2023 WL 2481479, at *2 (N.D. Tex. Mar. 13, 2023) ("A delay of . . . thirty days after the notice of removal has been found dilatory.") (citing *Gallegos v. Safeco Ins. Co. of Ind.*, No. 09-2777, 2009 WL 4730570, at *4 (S.D. Tex. Dec. 7, 2009) (cleaned up)); *Irigoyen v. State Farm Lloyds*, No. 03-324, 2004 WL 398553, at *4 (S.D. Tex. Jan. 5, 2004) ("A delay of two months after the filing of the original complaint or almost thirty days after the notice of removal has been found dilatory." (citing *Phillips v. Delta Air Lines, Inc.*, 192 F. Supp. 2d 727, 729 (E.D. Tex. 2001))) .
[26] *Vincent v. East Haven Ltd. P'ship*, No. 02-2904, 2002 WL 31654955, at *3 (E.D. La. Nov. 20, 2002) (ruling second factor in favor of amendment as the case was filed only five months before).

### 3. Whether Plaintiff will be Significantly Injured if Amendment is Not Allowed

Considerations of cost, judicial efficiency, and potentially inconsistent results are relevant in evaluating this factor.[27] Forcing a plaintiff to maintain two lawsuits in two different courts which arise out the same facts is inefficient, a waste of judicial resources, and may lead to inconsistent results.[28] Another consideration bearing on this factor is whether a plaintiff can be afforded complete relief without the amendment.[29]

Plaintiff's claims against the City of New Orleans are based on the enforceability or constitutionality of the city ordinance, not the facts underlying the car accident forming the basis of Plaintiff's claims against the original defendants. The City of New Orleans is not alleged to be a joint tortfeasor or potentially responsible party subject to a comparative fault allocation. Thus, maintaining a federal lawsuit regarding the accident and a separate state lawsuit regarding the constitutionality of Ord. No. 162-1722 would not unfairly burden plaintiff as necessary to weigh in favor of amendment.[30] Further, considerations of judicial economy counsel in favor of keeping these claims separate as the claims against the City of New Orleans are entirely distinct from the issues raised by this personal injury action. Thus, this factor weighs against granting leave to amend.

### 4. Other Equity Factors

This factor requires the court to consider any other factors bearing on the equities. "Although equitable factors include whether granting leave to amend would deprive a defendant of a properly invoked federal forum and . . . result in parallel state court proceedings . . . these

---

[27] *Porter v. Times Grp.*, No. 16-121, 2016 WL 8257692, at *6 (M.D. La. Nov. 4, 2016) (citations omitted) (ruling the third factor weighed in favor of amendment as the plaintiff would be forced to file separate suit against potential defendant), *R.&R. adopted*, 2017 WL 628296 (M.D. La. Feb. 15, 2017).
[28] *Jade Marine, Inc. v. Detroit Diesel Corp.*, No. 02-2907, 2002 WL 31886726, at *2 (E.D. La. Dec. 20, 2002); *Burton v. Mentor Corp.*, No. 96-2078, 1996 WL 751063, at *2 (E.D. La. Oct. 29, 1996).
[29] *Jerido v. Am. Gen. Life & Acc. Ins. Co.*, 127 F. Supp. 2d 1322, 1325 (M.D. Ala. 2001) (citation omitted).
[30] *See Lawrence v. Hertz Corp.*, No. 19-12114, 2019 WL 5541378, at *7 (E.D. La. Oct. 28, 2019) (citation omitted).

9

factors are likely to be present whenever a plaintiff in a removed case seeks to add a nondiverse defendant."[31]  Neither party articulates any equitable factors relevant to the inquiry, and the Court appreciates none.  Thus, this factor is neutral.

### III.     CONCLUSION

Considering the relevant *Hengsens* factors, the Court does not find that there is inherent danger of inconsistent results and waste of judicial resources should plaintiff be required to pursue her claims against the City of New Orleans in state court and allowing amendment would respect a diverse defendant's statutorily granted choice of federal forum.  Accordingly, for the foregoing reasons,

IT IS ORDERED that Plaintiff's Motion for Leave to File Amended and Supplemental Complaint (ECF No. 15) is DENIED.

New Orleans, Louisiana, this  3rd   day of April, 2024.

DONNA PHILLIPS CURRAULT  
UNITED STATES MAGISTRATE JUDGE

---

[31] *Gallegos*, 2009 WL 4730570, at *5 (internal citations omitted).